<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Dana N. Grant-Covert | Case No.:  15-20394-ABA<br><br>Chapter:  7 |
| Dana N. Grant-Covert, Plaintiff<br><br>v.<br><br>Mortgage Access Corp., d/b/a Weichert Financial Services, Wells Fargo Bank, NA, Zucker, Goldberg & Ackerman, LLC, and Reed Smith LLP, Defendants. | Adv. No.:  15-2041-ABA<br><br>Judge:  Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

The plaintiff/debtor, Dana N. Grant-Covert ("Plaintiff"), filed an adversary proceeding against Mortgage Access Corp. d/b/a Weichert Financial Services ("Weichert"), Wells Fargo Bank, NA ("Wells Fargo"), Zucker, Goldberg & Ackerman, LLC ("ZGA"), and Reed Smith LLP ("Reed Smith"), seeking to rescind a mortgage pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, et. seq., ("TILA"). Weichert filed a motion to dismiss, which will be granted.

The matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052 material to this decision.

DATED: November 18, 2016

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

## PROCEDURAL HISTORY

On June 2, 2015 Plaintiff voluntarily filed for protection under chapter 7 of the United States Bankruptcy Code. On July 15, 2015 the Plaintiff filed an adversary complaint in her bankruptcy case against Weichert, Wells Fargo, Reed Smith and ZGA. Doc. No. 1. On November 23, 2015, this court granted a Motion to Dismiss filed by Reed Smith and Wells Fargo Bank (the "Wells Fargo Opinion"). *See* Doc. Nos. 21, 22. On January 20, 2016, the court dismissed the complaint as against ZGA on its own Order to Show Cause for the failure to obtain relief from the stay against ZGA, which had filed its own bankruptcy case. Doc. No. 43. Thus only Weichert remains as a defendant.

On December 21, 2015 Weichert purported to answer the complaint by letter filed by an assistant vice president, Doc. No. 37, but the court entered an Order to Show Cause why that answer should not be stricken for failure to appear through counsel. Doc. No. 38. Before the Show Cause Order was heard, the Plaintiff filed a Request to Enter Default against Weichert. Doc. No. 40. Weichert not responding to either, the court struck Weichert's answer on January 19, 2016 and entered default against Weichert on January 21, 2016. Doc. No. 44.

On June 23, 2016, this court entered an Order to Show Cause why the adversary proceeding should not be dismissed as to Weichert for the Plaintiff's failure to seek default judgment against it. Doc. No. 50. Weichert then filed a Motion to Vacate Entry of Default. Doc. No. 54. This court granted that motion by order dated September 1, 2016. Doc. No. 59. Weichert then filed a Motion to Dismiss Adversary Proceeding, on September 9, 2016, Doc. No. 62, but failing to properly serve it, withdrew that document and re-filed it on September 26, 2016 with proper service. Doc. No. 64. The Plaintiff filed a Certification in Opposition to Motion to Dismiss Adversary Proceeding on November 7, 2016. Doc. No. 72. Weichert then filed a Response to the Plaintiff's Opposition. Doc. No. 73.

This court held a hearing on November 15, 2016 on the motion, and the matter is now ripe for consideration.

## FACTUAL ALLEGATIONS

As this is a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, this court recites the facts as alleged by the Plaintiff. In addition, as the Complaint was filed by a self-represented party, the court shall construe it liberally in favor of the Plaintiff. *Telfair v. Tandy*, No. CIV.A. 08-731(WJM), 2008 WL 4661697, at *3 (D.N.J. Oct. 20, 2008) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). In doing so, it also considers the documents attached to the Complaint, *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 559-560 (3d Cir. 2002), particularly to the extent that they contradict the Plaintiff's allegations. *See Adler Engineers, Inc. v. Dranoff Properties, Inc.*, CIV. 14-921 RBK/AMD, 2014 WL 5475189, at *2 (D.N.J. Oct. 29, 2014) (accepting number stated in attached contract rather than number alleged by the plaintiff in the complaint).

On February 12, 2007, the Plaintiff and Jason Covert executed a promissory note and security agreement on her personal dwelling, located at 69 Greenvale Road, Cherry Hill, New Jersey. Complaint, ¶ 32 and ex. B. Upon completion of the transaction, Weichert "transferred servicing right of the loan to Wells Fargo" thus the "Weichert Disclosure Statement being a 'lender' was not 'accurate.' See [15] U.S.C. 1638(a)." *Id.*, at ¶ 33. The Plaintiff further alleges that:

> On February 12, 2007 to present, Weichert and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Plaintiff who the true lender is and using subterfuge to hide the fact that Weichert acted as a "lender" at closing and were paid to pose as the "lender" when in fact the lender is undisclosed unregistered third party.

*Id.*, at ¶ 34.

The Plaintiff argued that, as a result, the transaction "was never consummated" and "[t]he limitation on the right to rescind was extended indefinitely." *Id.*, at ¶ 35.

The note attached to the Complaint, dated February 12, 2007, identifies the lender as Weichert Financial Services in a loan of $265,900. Complaint, ex. B. The note is signed by the Plaintiff and Jason Covert as borrowers, and is stamped "Pay to the order of Wells Fargo Bank, NA, without recourse Weichert Financial Services." *Id.* A mortgage, also dated February 12, 2007, was entered into by the Plaintiff and Mr. Covert, with MERS solely as nominee for lender Weichert Financial Services. *Id.* The mortgage states that the borrowers mortgaged the property for the purpose of obtaining $265,900, the property "[b]eing the same premises conveyed to the mortgagors herein mentioned by deed dated and recorded simultaneously herewith. The within mortgage is a first purchase money mortgage, the consideration for which constitutes part of the purchase price of the property." *Id.*, p. 2.

More than eight years later, on March 23, 2015, the Plaintiff sent "Notices of Rescission/Cancellation" to Weichert, Wells Fargo, and Mortgage Electronic Registration Systems ("MERS"). *Id.*, at ¶¶ 37, 40, 43; ex. C. Since none responded within 20 days she contends that the rescission is "affected [sic] and fully enforced and Plaintiff is entitled to the benefits and reimbursements accorded under the TILA." *Id.*, at ¶¶ 39, 42, 45. She argued that the mortgage is now "extinguished and any rights under the mortgage have terminated." *Id.*

The notices sent by Plaintiff and Mr. Covert stated that rescission was based on the following violations:

> (a) Weichert Financial Services failed to disclose to Jason Covert who the true lender is and as a result the transaction did not consummate;
> (b) Weichert Financial Services did not fund the loan;
> (c) Weichert Financial Services posed as a straw entity in dealing with me;
> (d) Jason Covert did not receive two signed copies of the loan documents from lender;

(e) Jason Covert did not receive two copies of a Right to Rescind/Cancel Notice as required by law from lender. All consumers with rescission rights must receive two copies of signed loan documents and a Right to Rescind/Cancel Notice from lender.

Complaint, ex. C. An identical list of violations naming the Plaintiff was also included in the letter. *Id.* Both the Plaintiff and Jason Covert signed the letter under the words "I wish to cancel." *Id.*

A signed certified mail card acknowledging receipt of the Notice to Rescind from Weichert supports that the notice was received. Complaint, ex. D. *See In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) (noting rebuttable presumption that properly addressed and stamped mail was received).

The Plaintiff's first cause of action seeks enforcement of her rescission of the transaction. Complaint, p. 11. She argues that she had a right to rescind pursuant to 15 U.S.C. § 1635 due to the failure to properly disclose the lender, and her sending notice of that intent effected that rescission. *Id.*, ¶¶ 47-53. She further argues that she is entitled to her costs to enforce the rescission pursuant to 15 U.S.C. § 1640(a)(3). *Id.*, at ¶¶ 56, 58. She states that she acted within the one year statute of limitations of section 1635, measured from the date she sent the notices of rescission. *Id.*, at ¶ 57.

The Plaintiff's second cause of action seeks enforcement of the rescission under 12 C.F.R. § 226.23. The Plaintiff again argues that rescission was effective as of her mailing of the notices, and that she did not need to first tender the proceeds received under the transaction, citing the Supreme Court's *Jesinoski v. Countrywide Home Loans, Inc.*, decision. *Id.*, at ¶¶ 62-63, 76. In this count, she adds an allegation that she was never provided closing documents, "called 'material disclosures[.]'" *Id.*, at ¶ 67. She argues that the latter entitles her to damages including twice the finance charge, actual damages, and costs, citing 15 U.S.C. § 1640. *Id.*, at ¶ 84.

In her third cause of action, the Plaintiff alleges that the transaction was never consummated. *Id.*, at ¶ 95. "Under these circumstances, the loan is not 'consummated' until the actual lender is identified, because until that point there is no legally enforceable contract." *Id.*, at ¶ 95. She alleges that because of this, the requirement that she rescind within three years "after the date of the consummation of the transaction" does not apply. *Id.*, at ¶¶ 92, 97.

A fifth count[1] seeks "Enforcement of Restitution" pursuant to 12 C.F.R. § 1026.23(d)(2). The Plaintiff here repeats her allegation about the lender not being identified, the loan not being consummated, and failure of the defendants to file a lawsuit within 20 days of receiving the Notices of Intent to Rescind. *Id.*, at ¶¶ 3, 6. She requests that the court issue a declaratory judgment that the note and mortgage are rescinded and that all monies paid by her, plus fees, costs and damages, should be returned. *Id.*, at ¶ 7.

The Plaintiff's Prayer for Relief includes enjoining any state court proceeding against her, return of the note marked cancelled, return of the mortgage, actual damages pursuant to 15 U.S.C. §§ 1640(a)(1) and 1611, statutory damages of twice the finance charge pursuant to 15 U.S.C. §

---

[1] The Plaintiff's fourth count alleges violation of 15 U.S.C. § 1611 by Wells Fargo and ZGA and therefore is not relevant here.

1640(a)(2), costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640, return of $71,415.27 plus escrow fees, costs and assessments, and closing costs, compensatory damages and damages for emotional distress, and such other relief as the court deems just and proper. *Id.*, at pp. 23-24.

Finally, the court notes that the Plaintiff filed a no asset chapter 7 case on June 2, 2015. *See* Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017) (the court may take judicial notice of the documents filed by the debtor); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); *Levine v. Egidi*, 1993 WL 69146, at *2 (N.D. Ill. 1993); *In re Paolino*, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir. 1995). On Schedule A she disclosed joint ownership of her residence, located at 69 Greenvale Road. She estimated the value of her interest in the property as $167,400 and the amount of the secured claim as $265,000. On Schedule D, she disclosed a creditor of a claim in the amount of $521,181.27 incurred on February 12, 2007 as "unknown unsecured nonpriority ??" and as unliquidated and disputed.

## CONCLUSIONS OF LAW

A. <u>Objection to hearing the Motion to Dismiss</u>

Preliminarily, the court notes that at the hearing held on this motion, the Plaintiff objected to Weichert's asserting a motion to dismiss, stating that Weichert had received "excessive opportunities to answer, in which they failed. I move the court to rule in my favor based on due process and equal protection. A default should be in place. There's been no excusable reason presented as to why they have neglected. However they have. So this violates my equal protection. Generally speaking, people in my position would not be given multiple opportunities to respond." Audio, 11/15/16 at 2:05. The court denied the Plaintiff's request from the bench, noting that the issue of Weichert's filing of an answer pro se, entry of default, and vacating of the entry of default, had been argued by the parties and decided previously by the court on September 1, 2016. *See* Doc. No. 59.

B. <u>Motion to Dismiss</u>

Weichert proceeds pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated into bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(b)(6) provides for the dismissal of a complaint if a plaintiff fails to state a claim upon which relief can be granted. *Stover v. Freedom Health Care*, No. CIV. 13-119 WJM, 2013 WL 2420643, at *1 (D.N.J. June 3, 2013). The moving party bears the burden of showing that no claim was stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The Supreme Court has instructed that the court must engage in "a context-specific task that requires [it] to draw on its judicial experience and common sense" to determine whether the complaint states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. at 678.

Weichert argues that as the TILA does not apply to a "residential mortgage transaction," which includes purchase money mortgages, the remedy of rescission is not available to the

Plaintiff. It continues that, even if she had a right to rescission, the claim would be barred by the statute of limitations. Moreover, as these issues were decided by this court in the Wells Fargo Opinion, that decision should continue to govern.[2]

1. Residential Mortgage Transaction

Rescission is not available to a borrower in "a residential mortgage transaction as defined in section 1602[x] of this title[.]" 15 U.S.C. § 1635(e)(1), 12 C.F.R. §§ 226.23(f)(1), 1026.23(f)(1). Section 1602(x) provides:

> (x) The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C.A. § 1602(x). *See In re Ramirez*, 329 B.R. at 732 (stating that rescission available only for non-purchase money consumer credit transactions secured by the consumer's home). Logically, where rescission does not apply, a creditor has no obligation to deliver a notice of right of rescission. *Perkins v. Cent. Mortgage Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006).

---

[2] Weichert's argument that the court's decision as to Wells Fargo applies here and cannot be challenged now by the Plaintiff is well placed.

> The "law of the case" doctrine reflects courts' general reluctance to reconsider matters soundly decided. "The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." *In re City of Phila. Litig.,* 158 F.3d 711, 717–18 (3d Cir. 1998). In many ways, "law of the case" disputes are the opposite side of the motion for reconsideration coin. The only difference between the two is the filing party: prevailing parties or similarly-situated parties seek to apply the "law of the case" against subsequent parties in similar circumstances, and losing parties seek reconsideration of the adverse decision. Not surprisingly, the Third Circuit has adopted the same basic "extraordinary circumstances" framework for reviewing "law of the case" disputes that applies to motions for reconsideration: the "law of the case" doctrine does not apply where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *In re City of Phila. Litig.,* 158 F.3d at 718 (citing *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116–17 (3d Cir. 1997)); *cf. N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995) (motion for reconsideration standard). However, the "law of the case" doctrine only applies to a court's decisions of law. *See, e.g., In re City of Phila. Litig.,* 158 F.3d at 718; Wright & Miller, Federal Practice and Procedure § 4478. In other words, dicta does not have precedential value such that a court may consider a matter previously decided.

*Falor v. G & S Billboard*, CIV A 04-02373(HAA), 2008 WL 5190860, at *2 (D.N.J. Dec. 10, 2008) (stating that law of the case mandated dismissal of case against defendant since case had been dismissed against other defendants on same products liability claim); *McKowan Lowe & Co. v. Jasmine, Ltd.*, CIV. 94-5522 (RBK), 2005 WL 3500032 (D.N.J. Dec. 20, 2005), *aff'd,* 231 Fed. Appx. 216 (3d Cir. 2007) (holding that as absence of loss causation was now the law of the case, defendants were entitled to summary judgment).

However, as the Plaintiff is pro se, the court finds it preferable to issue this full opinion, explaining again its reasoning and why any variations on the arguments that the Plaintiff presented here yet do not entitle her to denial of this motion to dismiss.

But the Plaintiff now argues that subsection (x) only excludes a "purchase money security interest arising under an installment sales contract." She states that since her transaction did not involve an installment sales contract, it is not excluded from the rescission remedy of section 1635.

While the court agrees that the Plaintiff did not enter into an installment sales contract, it disagrees with her reading of section 1602(x). Though a purchase money security interest arising under an installment sales contract is excluded, the statute also expressly excludes a mortgage, a deed of trust, and any other equivalent consensual security interest that is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling. The mortgage documents here clearly show that the Plaintiff purchased her home with the proceeds from this loan—a fact the Plaintiff does not deny. As a mortgage was created or retained against her residence to finance her purchase of the residence, it is a residential mortgage transaction that is excluded from the rescission provision of TILA and Plaintiff's claim fails.

2. <u>Failure to Respond to Notice of Intent to Rescind</u>

It then follows that the Plaintiff's sending notices of rescission did not bring about a rescission of the note and mortgage. *Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1249 (D. Colo. 2011) (holding that section 1635 did not apply to allow the plaintiff to rescind the transaction and thus the three-year statute of limitations in section 1635(f) did not assist her, because the definition under section 1602(x) of exempt transactions includes loans obtained by the plaintiff to finance the purchase of her primary residence). Therefore Weichert did not violate TILA by refusing to honor the purported rescission and it is not liable for damages under section 1640.

But the Plaintiff argues that her rescission attempt was successful because, regardless of whether she was entitled to rescind, Weichert had to respond within 20 days. "The instant suit is to enforce the <u>steps</u> <u>after</u> <u>rescission</u>, and NOT a suit to make the rescission effective by operation of law." Doc. No. 72, p. 10 (emphasis in original). Plaintiff cited 12 C.F.R. § 226(d)(2) as supporting that Weichert was required to respond, else it would be liable to her.

Section 1635 provides that "[w]ithin 20 days of receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). Thereafter, "the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value." *Id*. "If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it." *Id*.

Section 226.32(d)(2) of Title 12 of the Code of Federal Regulations, cited by the Plaintiff, provides:

(d) Effects of rescission. . . .

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

Both section 1635(b) and section 226.23(d) provide for court discretion, the former stating "The procedures prescribed by [15 U.S.C. § 1635(b)] shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(a) (last sentence), and the latter stating "The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order." 12 C.F.R. § 226.23(d)(4).

As explained in the Wells Fargo Opinion, courts have construed sections 1635(b) and 226.32(d) as not automatically voiding a transaction. "[U]nder § 1635(b), the lender has twenty days to decide whether it will (i) recognize the existence of a rescission right and privately arrange rescission with the borrower and any other interested parties, or instead (ii) dispute the existence of a rescission right *and await the borrower's initiation of suit*." *Bradford v. HSBC Mortgage Corp.*, 838 F. Supp. 2d 424, 429 (E.D. Va. 2012) (emphasis supplied). The notice of intent is just that—making the lender aware that the borrower *intends* to rescind, not a rescission in fact. *Id.* Thus when a lender does not respond within 20 days, the borrower may, as the Plaintiff did here, file an action seeking to enforce rescission. *Id.* As explained by the Ninth Circuit Court of Appeals: "Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (emphasis in original). *See also Lenhart v. Bank of Am., N.A.*, 2:12-CV-4184, 2013 WL 1814820, at *7 (S.D. W. Va. Apr. 29, 2013) (noting that a creditor might be liable for damages under section 1640 if it improperly refused rescission).

In coming to this conclusion, the *Bradford* court discussed *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), which affirmed that a secured loan "is rendered void only when a creditor voluntarily voids the security interest or a court orders rescission." *Bradford v. HSBC Mortgage Corp.*, 838 F. Supp. 2d at 430, citing *Shelton* at 821. The *Shelton* court described this as the majority view of reviewing courts. *American Mortgage Network, Inc. v. Shelton*, 486 F.3d at 820-21. The *Bradford* court explained its reasoning:

> Because § 1635(b) merely prescribes 'procedural requirements' that a district court may adapt at its discretion, it is clear that mere notice of intent to rescind does not trigger a lender's obligation to effect rescission immediately given that a lender cannot know with certainty ex ante whether a court will deny rescission or modify the procedure for effecting rescission. In other words, § 1635(b) cannot, at once, be a set of default procedures a court may equitably alter after a borrower's notice of intent to rescind and, at the same time, require a lender to effect rescission immediately upon receiving such notice.

*Bradford v. HSBC Mortg. Corp.*, 838 F.Supp.2d at 433–34. See *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1125 (N.D. Ill. 2012) (following *Bradford*), aff'd sub nom. *Iroanyah v. Bank of Am.*, 753 F.3d 686 (7th Cir. 2014).

Since this court's Wells Fargo Opinion, at least one more court has agreed with this analysis. In *Sluka v. Rushmore Loan Mgmt. Servs., LLC*, 16-00357 JMS-KSC, 2016 WL 6275387 (D. Haw. Oct. 26, 2016), the plaintiff similarly argued "that Defendant's failure to respond to her notice of rescission within 20 days entitles her to rescission even though the notice is time-barred." *Id.*, at *3. The court explained that "the statute is not self-effectuating and imposes no automatic obligation on Defendant to rescind the mortgage loan." *Id.* "Construing the statute otherwise 'would give TILA claimants the right to simply walk away with a windfall . . . without any further obligation,' a result certainly not intended by Congress.'" *Id.* (quoting *Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d at 429, which was quoting *Shelton*, 486 F.3d at 820). See *Baker v. Bank of Am., N.A.*, 5:13-CV-92-F, 2014 WL 298909, at *6 (E.D.N.C. Jan. 27, 2014) (same) (appeal pending).

The *Jesinoski* opinion cited by the Plaintiff is not to the contrary. There, the Supreme Court stated that "The language [of section 1635(a)] leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). But it so stated in determining whether an obligor had to notify a creditor of rescission within three years, or actually sue within three years: "It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years." *Id.* See *Sherzer v. Homestar Mortgage Servs.*, 707 F.3d 255 (3d Cir. 2013) (same). The Supreme Court was concerned only with the statute of repose. The decision does not stand for allowing a rescission where one has no such right.

Plaintiff's theory here, that she can rescind by default, is correspondingly incorrect. As explained to the Plaintiff several times throughout this case, where a defendant fails to answer a complaint, the plaintiff must still prove that he or she has cause for relief. *Pfeiffer v. Wulster*, 09-13388 MBK, 2011 WL 1045355, at *2 (Bankr. D.N.J. Mar. 17, 2011) (stating that plaintiff must demonstrate a prima facie case to be entitled to entry of judgment by default), aff'd sub nom. *In re Wulster*, ADV 09-2015 MBK, 2012 WL 589564 (D.N.J. Feb. 22, 2012). Thus, even had Weichert not appeared in this proceeding, the Plaintiff would not have won her case, as she has no right to rescind under TILA.

### 3. Statute of Limitations

Both Weichert and the Plaintiff are correct on parts of their statute of limitations arguments. A creditor who fails to comply with any requirement under section 1635—which provides for rescission—may be liable for certain damages, including "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court[.]" 15 U.S.C. § 1640(a)(3). An action for damages for violation of section 1635 may be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e). Thus, the Plaintiff is correct that she had one year

from Weichert's failure to respond to her Notice of Intent to Rescind to bring a lawsuit to seek damages for failure to rescind. She sent those notices on March 23, 2015 and filed this adversary proceeding on July 15, 2015, thus was within the one year period.

But an obligor's right to rescind runs "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." 15 U.S.C. § 1635(a). If the creditor never delivers the material disclosures, as alleged here, then an obligor has "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," to assert a right of rescission. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The Supreme Court has stated that the latter "talks not of a suit's commencement but of a right's duration." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998). This has been interpreted to mean that, rather than a statute of limitations, the three-year period is a statute of repose. *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301 n. 18 (3d Cir. 2010), *as amended* (Oct. 20, 2010). Statutes of repose are not subject to extension by application of equitable tolling. *Williams v. Wells Fargo Home Mortgage, Inc.*, 410 Fed. Appx. 495, 499 (3d Cir. 2011). Thus the three-year period is absolute. *Luther v. Wells Fargo Bank*, 4:11CV00057, 2012 WL 4405318, at *4 (W.D. Va. Aug. 6, 2012).

Therefore, even if the Plaintiff had a right to rescind, because she did not seek to rescind within three years from the date of consummation of the transaction, she cannot sue to enforce rescission or for damages for failure to rescind. The transaction occurred on February 12, 2007. She sent the Notices of Intent to Rescind more than eight years later, on March 23, 2015. Since she did not timely rescind, she has no cause of action for failure to rescind. *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 903 (3d Cir. 1990) ("The Coplins' entitlement to statutory damages under 15 U.S.C. § 1640 is, therefore, wholly dependent upon, and flows directly from, their entitlement to rescissory relief."); *Maines v. Guillot*, 5:16CV00009, 2016 WL 3556258, at *3 (W.D. Va. June 16, 2016) ("Because the plaintiff no longer had the right to rescind her 2005 loan transaction at the time foreclosure proceedings were initiated in 2015, she has no plausible claim for damages under TILA.").

The Plaintiff argues that the statutes of limitations never ran because "the transaction was never consummated as alleged in the complaint, a fact that must be taken as true on the 12(b)(6) motion." The basis of that allegation in the Complaint was that the "true lender" was never disclosed. But the Plaintiff also alleges that "Upon completion of the signing of the loan documents on February 12, 2007, Weichert has transferred servicing right of the loan to Wells Fargo [sic] Weichert Disclosure Statement being a 'lender' was not 'accurate.'" Complaint, ¶ 33. Lenders and servicers are two distinct roles: Wells Fargo being the servicer did not negate Weichert being the lender. The mortgage documents the Plaintiff attached to her Complaint clearly show that Weichert originated this mortgage. *See Jiaxing Hongyu Knitting Co. v. Allison Morgan LLC*, 11 CIV. 09342 AJN, 2013 WL 81320, at *6 (S.D.N.Y. Jan. 8, 2013) (stating that documentary evidence attached to a complaint that contradicted the allegations of the complaint may render the allegations insufficient to defeat a motion to dismiss). That Weichert transferred it after consummation does not mean either than the transaction was not consummated or that Weichert was not the lender.

The Plaintiff also asserts that the transaction was not consummated because she cancelled it in 2015 when she sent her notices of rescission. "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The Plaintiff alleged in her Complaint that "On February 12, 2007, in anticipation of a home loan in the amount of $265,900.00, Dana Grant-Covert executed a promissory note and security agreement on Plaintiff's personal dwelling[.]" Complaint, ¶ 32. Thus she admits that she entered into the transaction. Indeed, had the loan transaction never consummated, the Plaintiff could not have purchased her residence. And she could not later cancel something that did not occur in the first place.

The Plaintiff also cites *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015), for the proposition that the statute of limitations did not run. But as explained above, *Jesinoski* held that a borrower need only send a written notice of intent to rescind within three years of the transaction, not file suit within that period.

4. The Accardi doctrine

One argument of the Plaintiff remains. In her opposition to the Motion to Dismiss, she asserts that:

> This Court is bound by the Accardi Doctrine and cannot decline jurisdiction by dismissing the complaint, such action would constitute an abandonment of, inter alia, multiple Supreme Court Precedent, misapplication of the Rooker-Feldman Doctrine, misinterpretation and misapplication of TILA and Regulation Z, violation of the Federal Rules of Civil Procedure which govern almost all litigations in this Court; and in doing so the Court would not construe the Federal Rules of Evidence to secure fairness to the end that the truth may be ascertained and proceeding justly determined in accordance with the Accardi Doctrine.

Doc. No. 72, p. 9.

The Plaintiff argues that the doctrine, based on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), stands for the proposition that administrative agencies must follow their own regulations. She alleges that this court is a federal agency, citing 28 U.S.C. § 2671. *Id.*, pp. 8-9.

The *Accardi* decision held that an agency's failure to comply with its own rules automatically nullified its actions. *Leslie v. Attorney Gen. of U.S.*, 611 F.3d 171, 178 n.4 (3d Cir. 2010). The Third Circuit Court of Appeals distinguished this to apply only where the regulation was "promulgated to protect fundamental statutory or constitutional rights[.]" *Id.*, at 178.

This doctrine has no application to this case, as this court is not a federal agency. Section 2671 of Title 28, cited by the Plaintiff, defines agencies only for the purpose of the Federal Tort Claims Act, which "protects Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common

law torts of Federal employees with an appropriate remedy against the United States." Pub. L. 100-694, § 2, Nov. 18, 1988, 102 Stat. 4563. It is not applicable here.

The court knows of no regulations applicable to bankruptcy courts and the Plaintiff did not proffer any. Rather, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure govern cases brought in this court. Dismissing an adversary proceeding for failure to state a cause of action under Federal Rule of Civil Procedure 12(b) (incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7012), is not a declination of jurisdiction, but a proper exercise of the court's jurisdiction over adversary proceedings.

## **CONCLUSION**

The Plaintiff failed to state causes of action against Weichert, the Motion to Dismiss all counts against Weichert will be granted.

An appropriate judgment will be entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.


Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 18, 2016